UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| James Bigham, John Quarnstrom, Robert Vranicar, Jim Bowman, Mike McCauley, and Matt Fairbanks, as Trustees of the Sheet Metal Local #10 Control Board Trust Fund, and the Sheet Metal Local #10 Control Board Trust Fund, <br><br> Plaintiffs, <br><br> v. <br><br> R&S Heating and Air Conditioning, Inc., <br><br> Defendant. | Civil No. 14-1357 (DWF/FLN) <br><br> MEMORANDUM OPINION AND ORDER |

_____

Amy L. Court, Esq., Carl S. Wosmek, Esq., and Christy E. Lawrie, Esq., McGrann Shea Carnival Straughn & Lamb, Chtd, counsel for Plaintiffs.

Martin D. Kappenman, Esq., and Thomas R. Revnew, Esq., Seaton, Peters & Revnew, PA, counsel for Defendant.

_____

INTRODUCTION

This lawsuit is based on the alleged failure of Defendant R&S Heating and Air Conditioning, Inc. ("R&S") to make contributions to various employee benefit plans as required under two collective bargaining agreements. Plaintiff Sheet Metal Local #10 Control Board Trust Fund (the "Control Board") is a clearinghouse that accepts and distributes contributions from employers, like R&S, to employee benefit plans. Plaintiffs

James Bigham, John Quarnstrom, Robert Vranicar, Jim Bowman, Mike McCauley, and Matt Fairbanks (the "Trustees") are trustees of the Control Board.

Presently, the Court considers Plaintiffs' motion for summary judgment. According to Plaintiffs, R&S performed some work covered by the collective bargaining agreements during the relevant time frame but failed to maintain adequate records of the work performed. As such, Plaintiffs argue, R&S must produce evidence to rebut Plaintiffs' calculation of contributions due to the Control Board—which Plaintiffs claim R&S cannot do. The Court concludes, however, that R&S has produced evidence sufficient to challenge Plaintiffs' calculation and, therefore, has raised a genuine issue of material fact that precludes summary judgment. Accordingly, the Court denies Plaintiffs' motion.

## BACKGROUND

R&S is a Minnesota corporation engaged in the business of installing, fabricating, and servicing heating and air conditioning ("HVAC") systems and plumbing equipment. (Doc. No. 33 ("Lawrie Aff.") ¶ 2, Ex. A at 4.) Beginning in 2011, R&S was subject to two collective bargaining agreements relevant to this litigation: (1) the Residential HVAC Labor Agreement Between the Residential Subdivision of the Metro Area Division SMARCA, Inc. and Residential HVAC Employees Local No. 10 Metro Area Effective May 20, 2011 – April 30, 2013 (the "Residential CBA"); and (2) the Sheet Metal Labor Agreement for Commercial and Specialty Between the Commercial Subdivision of the Twin Cities Division SMARCA, Inc. and Sheet Metal Workers Local No. 10 Metro Area Effective June 24, 2011 to April 30, 2014 (the "Commercial CBA")

2

(collectively, the "CBAs").  (*Id.* ¶¶ 3-4, Exs. B-C.)  Both CBAs incorporate by reference the Sheet Metal Local #10 Control Board Trust Fund Restated Declaration of Trust (the "Trust Agreement").  (*Id.* ¶ 8, Ex. G.)

Among other things, the CBAs and the Trust Agreement provide that R&S must make certain contributions to the Control Board, for distribution to various fringe benefit plans, based on the hours that R&S employees spend performing work covered by the CBAs.  (Residential CBA at Arts. VII-XIV; Commercial CBA at Arts. VII-XIV; Trust Agreement at Art. III.)  In general, the Residential CBA covers residential HVAC and sheet metal work, while the Commercial CBA covers commercial HVAC and sheet metal work.  (Residential CBA at Art. I; Commercial CBA at Art. I.) Thus, under the CBAs, R&S's contributions to the Control Board depend on the type of work that R&S's employees perform.

The CBAs also authorize the employee benefits plans to obtain records from an employer, such as R&S.  (Residential CBA at Art. XIII, § 3; Commercial CBA at Art. XIII, § 3.)  And, the Trust Agreement provides that the Control Board may conduct audits to ensure that an employer, like R&S, is fulfilling its responsibility to contribute to the Control Board:

> Upon written request from the Control Board Trustees, an Employer shall furnish the Trustees and/or their designated agent with such information as reasonably may be requested by the Trustees to determine whether the Employer has performed fully its obligations to the Control Board.  Such information includes payroll information, IRS Forms 1099 and 1096, etc.  The Control Board Trustees may decide to audit any Employer(s) from time to time for the purpose of determining whether the Employer(s) is/are fully performing their obligations to make contributions to the Control Board.

(Trust Agreement at Art. III, § 10.)

In 2010, R&S entered Chapter 11 bankruptcy proceedings. (Lawrie Aff. ¶ 11, Ex. J at 34-35.) At approximately the same time, R&S changed its business model from fabricating and installing duct work to providing local service calls and performing underground utility work, concrete work, and electrical work. (*Id.* ¶¶ 11-12, Ex. J at 35-36, Ex. K at 44.) R&S also began to utilize subcontractors who performed tasks including plumbing, asbestos testing, electric work, and septic work. (*Id.* ¶ 12, Ex. K at 100-12.) While R&S continued to make contributions to the Control Board after altering its business model, R&S did not make contributions for all of its employees. (*Id.* ¶ 12, Ex. K at 30-40, 43-44; Doc. No. 30 ("Rice Aff.") ¶¶ 3-4.) In approximately December 2013, R&S stopped making any contributions because it believed that its employees no longer performed any covered work. (Lawrie Aff. ¶ 12, Ex. K at 136-39; Rice Aff. ¶¶ 3-4.)

In January 2014, the Trustees notified R&S of their intent to audit R&S for the purpose of determining whether R&S was making required contributions to the Control Board. (Rice Aff. ¶ 6.) In connection with the planned audit, the Trustees obtained payroll records and invoices from the National Labor Relations Board ("NLRB"), which the NLRB had obtained from R&S in connection with a separate matter, as well as redacted tax records from R&S. (Lawrie Aff. ¶ 15.) The Trustees, however, were unable to obtain all of the records they believed were necessary to complete the audit. (*Id.*)

On April 30, 2014, Plaintiffs filed this lawsuit. (Doc. No. 1 ("Complaint").) In Count 1, Plaintiffs alleged that R&S breached the CBAs and the Trust Agreement by failing to comply with the Trustees' audit request, and they requested an order requiring R&S to produce complete payroll and employment records. (*Id.* ¶¶ 19-26.) In Count 2, Plaintiffs sought damages, pursuant to § 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, related to R&S's failure to pay contributions required by the CBAs and the Trust Agreement. (*Id.* ¶¶ 27-33.)

In discovery, R&S produced timecard reports, invoices, work orders, general ledger transactions, and screen shots from its accounting system. (*See* Lawrie Aff. ¶ 10, Ex. I.) Some, but not all, of the records provide a complete description of the work that was performed by R&S employees and subcontractors. (Doc. No. 29 ("Grochow Aff.") ¶ 4; Doc. No. 31 ("McCauley Aff.") ¶¶ 3-4; *see also* Doc. No. 42 ("Kappenman Aff.") ¶¶ 7-8, Ex. F, Ex. G at 66-78.) Further, some but not all of the work performed by R&S employees and subcontractors during the relevant time frame was covered work. (Lawrie Aff. ¶ 12, Ex. K at 23-31, 51-58; McCauley Aff. ¶¶ 4-6.)

Using R&S's records, the Trustee's auditor concluded that R&S owed approximately $1.3 million in unpaid contributions for the period from November 1, 2012 through April 30, 2014. (Grochow Aff. ¶ 13, Ex. A.) In reaching this conclusion, the auditor relied upon the opinions of the Trustees and their counsel regarding whether certain hours reflected covered or non-covered work. (Kappenman Aff. ¶ 4, Ex. C at 10-14; Lawrie Aff. ¶¶ 16-19; McCauley Aff. ¶¶ 3-6.) In his deposition, the auditor explained that he considered work performed by subcontractors to be covered work

5

unless he received documentation showing that such work was non-covered. (Kappenman Aff. ¶ 4, Ex. C at 16-17.) Specifically, the auditor testified that he assumed that certain subcontractors performed non-covered plumbing and electric work but nonetheless counted work by those subcontractors as covered work for purposes of the audit. (*Id.* ¶ 4, Ex. C at 17.)

Now, R&S challenges this audit with a report from its expert, a forensic accountant. (Kappenman Aff. ¶ 6, Ex. E.) First, the expert opines that the Trustees' audit is inaccurate, stressing that the audit report lacks supporting information and documentation. (*Id.* ¶ 6, Ex. E at 5.) In particular, the expert points out that the audit report summarizes labor hours for individual employees and subcontractors without indicating the type of work performed and does not explain how the auditor calculated labor hours or determined whether labor hours involved covered or non-covered work. (*Id.*; *see also* Grochow Aff. ¶ 13, Ex. A.) Second, the expert opines that R&S overpaid the Control Board by approximately $98,000 during the audit period. (Kappenman Aff. ¶ 6, Ex. E at 5-6.) To determine whether certain labor hours involved covered or non-covered work, the expert relied upon the opinions of John Moser, a project manager employed by R&S. (*Id.* ¶ 6, Ex. E at 6-7; Lawrie Aff. ¶¶ 12, 14, Ex. K at 51-53, Ex. M at 26-30.) Specifically, Moser placed invoices into nine categories based on the type of work performed, and he designated some of those categories as covered work and some as non-covered work. (Kappenman Aff. ¶ 6, Ex. E at 6; Lawrie Aff. ¶ 12, Ex. K at 51-53.) According to R&S's expert, if Moser's categorization was incorrect, then the expert's conclusion would also be incorrect. (Lawrie Aff. ¶ 14, Ex. M at 30.)

6

# DISCUSSION

## I. Summary Judgment Standard

Summary judgment is appropriate if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party. *Weitz Co. v. Lloyd's of London*, 574 F.3d 885, 892 (8th Cir. 2009). However, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). A party opposing a properly supported motion for summary judgment "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *see also Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995).

## II. Plaintiffs' Claim for Unpaid Contributions

ERISA § 515 governs Plaintiffs' claim that R&S failed to pay contributions due to the Control Board under the CBAs. That statute states:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make

7

such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. Plaintiffs bring their claim pursuant to ERISA § 502(a)(3), which authorizes fiduciaries—such as the Trustees—to enforce ERISA § 515. 29 U.S.C. § 1132(a)(3).

According to Plaintiffs, the Court should grant summary judgment to them because R&S cannot produce evidence sufficient to challenge Plaintiffs' audit report and calculation of unpaid contributions. In making this argument, Plaintiffs rely on the ERISA principle "that employers should not be able to avoid contribution payment obligations by failing to keep adequate records." *Reed v. Insituform Techs., Inc.*, 994 F. Supp. 2d 1022, 1031 (D. Minn. 2014). Although courts recognizing this principle have formulated it in slightly varying terms, the following burden-shifting rule has emerged: If a benefit fund meets its initial burden of (1) showing that an employer engaged in some covered work and failed to produce adequate records of that work and (2) providing a calculation of the contributions owed by the employer, the burden shifts to the employer, which must put forth evidence challenging the benefit fund's calculation. *See, e.g.*, *Motion Picture Indus. Pension & Health Plans v. N.T. Audio Visual Supply, Inc.*, 259 F.3d 1063, 1066 (9th Cir. 2001); *Combs v. King*, 764 F.2d 818, 825-27 (11th Cir. 1985).

Multiple circuit courts, as well as judges in this District, have recognized this rule. *See, e.g.*, *Laborers' Pension Fund v. RES Envtl. Servs., Inc.*, 377 F.3d 735, 739 (7th Cir. 2004); *Motion Picture*, 259 F.3d at 1066; *Ill. Conference of Teamsters & Emp'rs Welfare Fund v. Steve Gilbert Trucking*, 71 F.3d 1361, 1366-67 (7th Cir. 1995); *Mich. Laborers'*

*Health Care Fund v. Grimaldi Concrete, Inc.*, 30 F.3d 692, 696-97 (6th Cir. 1994); *Brick Masons Pension Trust v. Indus. Fence & Supply, Inc.*, 839 F.2d 1333, 1338-39 (9th Cir. 1988); *Combs*, 764 F.2d at 825-27; *Reed*, 994 F. Supp. 2d at 1031; *Nali v. MaxPro Flooring, LLC*, Civ. No. 09-3625, 2013 WL 673779, at *7-8 (D. Minn. Feb. 25, 2013); *Seipel v. Arrowhead Indus. Serv., Inc.*, Civ. No. 07-3864, 2010 WL 605722, at *4 (D. Minn. Feb. 11, 2010). While the Eighth Circuit has acknowledged the burden-shifting rule, it has not expressly adopted the rule in the ERISA context. *See Carmody v. Kan. City Bd. of Police Comm'rs*, 713 F.3d 401, 406-07 (8th Cir. 2013); *Carpenters Fringe Benefit Funds of Ill. v. McKenzie Eng'g*, 217 F.3d 578, 585 (8th Cir. 2000); *Stanton v. Larry Fowler Trucking, Inc.*, 52 F.3d 723, 727-28 (8th Cir. 1995).

In the absence of Eighth Circuit precedent, the parties urge the Court to consider two Seventh Circuit cases, each reviewing a district court's grant of summary judgment against an employer and applying the burden-shifting rule.[1] Plaintiffs direct the Court's attention to *RES Environmental*. In that case, the court found that the employer failed to submit any documents contradicting the plaintiffs' assertion that the employer did not maintain adequate records. *RES Envtl.*, 377 F.3d at 739. Further, the court rejected the employer's single affidavit challenging the plaintiffs' audit, noting that the affidavit contained "no specific information supporting . . . generalized and conclusory

---

[1] Many cases applying the ERISA burden-shifting rule do not involve a motion for summary judgment *against* an employer. *See, e.g.*, *Combs*, 764 F.2d at 819 (reversing district court's grant of summary judgment in favor of employer); *Brick Masons*, 839 F.2d at 1335, 1339 (reversing district court's damages judgment after bench trial); *Nali*, 2013 WL 673779, at *2, 9 (assessing damages after entering default judgment against employer).

allegations" and "fail[ed] to introduce any factual assertion to dispute the audit's findings." *Id.* In these circumstances, the court affirmed summary judgment against the employer. *Id.*

R&S refers the Court to *Gilbert Trucking*. There, the district court found that the employer did not maintain adequate records, and the employer relied on affidavit and deposition testimony to challenge the plaintiff's audit and damages calculation. *Gilbert Trucking*, 71 F.3d at 1366-67. This testimony suggested that the auditor failed to account for the fact that the employer paid year-end bonuses and did not pay all employees union scale wages. *Id.* at 1366. Further, it suggested that not all hours for which employees were paid involved covered work. *Id.* The court concluded that this testimony raised a genuine issue of material fact as to the accuracy of the audit, and it reversed the district court's grant of summary judgment to the plaintiffs as to the amount of damages. *Id.*

In the Court's view, *RES Environmental* and *Gilbert Trucking*, taken together, stand for the proposition that when the burden shifts to the employer under the ERISA burden-shifting rule, the employer must challenge the fund's audit with more than a "conclusory" affidavit to avoid summary judgment against it. *See RES Envtl.*, 377 F.3d at 739. Instead, to survive summary judgment, the employer must provide evidence of specific facts that call the accuracy of the audit into question, such as testimony suggesting that the auditor relied on incorrect facts. *See Gilbert Trucking*, 71 F.3d at 1366.

Here, assuming without deciding that Plaintiffs have met their initial burden, the Court finds that R&S has produced evidence sufficient to challenge Plaintiffs' audit at the

10

summary judgment stage. Unlike the employer in *RES Environmental*, R&S provides more than a single conclusory affidavit; it submits expert testimony pointing out deficiencies in the audit report, as well as an alternate calculation of benefit contributions. In addition, similar to the employer in *Gilbert Trucking*, R&S points to deposition testimony by the auditor and Moser, suggesting that the auditor lacked an adequate basis for assuming that certain hours involved covered work. Although the Court acknowledges that evidence in the record may undermine Moser's determination of covered and non-covered work, the Court finds that R&S raises genuine issues of material fact sufficient to withstand summary judgment.

## CONCLUSION

The Court finds that genuine issues of material fact preclude summary judgment against R&S. Accordingly, the Court denies Plaintiffs' motion.

## ORDER

Based on the files, records, and proceedings herein, and for the reasons stated above, **IT IS HEREBY ORDERED** that Plaintiffs' Motion for Summary Judgment (Doc. No. [26]) is **DENIED**.

Dated:  April 22, 2016                              s/Donovan W. Frank
                                                    DONOVAN W. FRANK
                                                    United States District Judge